OPINION OF THE COURT
Eugene J. Berkowitz, J.
The People herein are seeking an order requiring the defendant to provide blood samples as nontestimonial evidence in this matter, pursuant to CPL 240.40 (2) (b) (v).
The defendant has been indicted for various offenses, including rape in the first degree. The facts underlying the instant indictment, as alleged by the People, are as follows:
On or about January 31, 1989, the complainant was at the home of the defendant’s mother, helping her baby-sit for approximately 10 children. The defendant asked the complainant to have sex with him. When she refused, the defendant punched and kicked her down» a staircase, causing her to suffer lacerations and bruises. The defendant then pushed her onto a bed and pulled out a knife. He then forcibly put his penis in her vagina, touched her breasts and buttocks, and forced his penis into her mouth.
Thereafter, the People contend that the defendant told his victim that he had AIDS. The complainant was taken to Queens General Hospital, where a Vitullo kit was taken from her. However, as a result of her advising the ambulance attendant of what the defendant had stated to her, the New York Police Department Laboratory was unable to analyze the kit.
The People set forth two reasons for their request for the blood samples: (A) To determine whether the defendant can be identified or excluded as the individual who committed the alleged sexual offenses, citing DNA fingerprinting as a sophisticated method of comparing the genetic factors between the semen source of the rape and the defendant’s blood; and (B) to determine if the defendant has AIDS, in order for the Vitullo kit to be safely analyzed.
Defendant’s counsel is opposed to this court rendering such an order on the following grounds:
1. That prior to the People requesting a blood sample for DNA comparison, they must first show that they have a sample already in their possession, and that such sample has comparative value, which defendant alleges the People do not have.
*915 2. That it is unconstitutional to force the defendant to take a blood test to test him for AIDS; and
3. That defendant’s HIV status is irrelevant and prejudicial to the instant case.
This court, having previously inspected the Grand Jury minutes pursuant to defendant’s omnibus motion, and being fully familiar with the facts of this case, finds that: (1) There is a showing of probable cause that this defendant committed the crimes alleged in the indictment; (2) the People have particularized the nature of what they are seeking, and the particular person from whom these blood samples are to be taken; and (3) there is no less intrusive means of obtaining the needed evidence (see, Matter of Abe A., 56 NY2d 288; Barber v Rubin, 72 AD2d 347; People v Pinkney, NYLJ, Feb. 4, 1982, at 12, col 1).
The relief sought by the People is not such that would be considered "brutal” and "offensive” and not comporting with traditional ideas of fair play and decency (Breithaupt v Abram, 352 US 432, 435, citing Rochin v California, 342 US 165 [stomach pumping forcibly used to extract matter from stomach]). In Breithaupt (supra, at 436-437), the United States Supreme Court stated: "The blood test procedure has become routine in our every day life. It is a ritual for those going into the military service, as well as for those applying for marriage licenses. Many colleges require such tests before permitting entrance and literally millions of us have voluntarily gone through the same, though a longer, routine in becoming blood donors. Likewise, we note that a majority of our States have either enacted statutes in some form authorizing tests of this nature, or permit findings so obtained to be admitted in evidence. We therefore conclude that a blood test taken by a skilled technician is not such 'conduct that shocks the conscience,’ Rochin, supra, at 172, nor such a method of obtaining evidence that it offends a 'sense of justice,’ Brown v. Mississippi, 297 U.S. 278”.
Further, the Supreme Court held in Schmerber v California (384 US 757, 771): "Such tests are a commonplace in these days of periodic physical examinations, and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.”
The New York Legislature has provided the prosecutor the means for moving the court, subject to constitutional limita *916 tians, for an order to obtain such nontestimonial evidence from a defendant. Among other things, said order may require defendant to permit "the taking of samples of blood * * * from his body in a manner not involving an unreasonable intrusion thereof or a risk of serious physical injury thereto”. (See, CPL 240.40 [2] [b] [v].)
The unique issue here is the "Catch 22” situation wherein, on the one hand, the People have a sampling of the perpetrator’s semen that will not be tested by the police laboratory if, in fact, the perpetrator had AIDS; while, on the other hand, a necessary requirement for allowing the taking of a blood sample, as argued by the defense, is the possession of a viable sample with comparative value.
The court finds that the People have met their burden in accordance with Matter of Abe A. (supra) in establishing the probable cause to believe that the suspect has committed the crime, and that the methods they intend to use to secure the blood samples will be safe and reliable. The third factor that the Court of Appeals requires in order to grant the People’s request herein is "a 'clear indication’ that relevant material evidence will be found”. (Supra, at 291.) The purpose of this requirement is to guard against a " 'fishing expedition’ ”, but, as the Court of Appeals stated "[njeedless to say, most often facts which would establish probable cause will also tend to establish the high degree of relevance the nontestimonial evidence sought would have”. (Supra, at 297, citing Schmerber v California, supra.)
The testing of a Vitullo kit has become a necessary element in the immediate investigation of alleged sexual crimes. Where, as here, a defendant announces to a third party/ victim that he is a carrier of AIDS, he cannot now place himself in the situation of claiming that his constitutional rights would be violated by the taking of a blood sample, in order to prevent any further investigation and possible prosecution of the victim’s assailant.
Moreover, the victim has a right to know whether she may have been exposed to the AIDS virus by reason of having been exposed to the body and sexual fluids of the defendant. Such was the case in People v Thomas (139 Misc 2d 1072, 1075), and the court there ordered the defendant to submit to a blood test because it was "the intelligent humane, logical and proper course of action under the circumstances.”
This court believes that the People have acted in good faith *917 to obtain an appropriate sample from the complainant via the Vitullo kit. However, if the New York City Police Department Laboratory will not, as a matter of policy, analyze the Vitullo kit where there is an indication of AIDS, and said indication resulted directly from the defendant’s own actions and statements, the People should not now be prevented from obtaining what ordinarily would be an appropriate and constitutionally recognized request for nontestimonial evidence.
Finally, the defendant’s argument that the taking of such a test would be prohibited by Public Health Law §2781 is without merit, under these circumstances.
The defendant conveniently quotes that portion of subdivision (1), which states in part that "no person shall order the performance of an HIV related test without first receiving the written, informed consent of the subject of the test”. The language preceding this statement, however, is as follows: "1. Except as provided in section three thousand one hundred and twenty-one of the civil practice law and rules, or unless otherwise specifically authorized or required by a state or federal law, no person shall”. CPLR 3121 (a) provides that a party is to submit to a physical, mental or blood examination by a designated physician after the commencement of an action in which the mental or physical condition or the blood test relationship of a party is in controversy, upon notice by the other party.
Clearly, the defendant himself has placed into controversy the issue of his physical condition with respect to having AIDS. Secondly, as previously noted, our State statutes pertaining to discovery in criminal proceedings allows for the taking of blood samples if it is done within constitutional limitations. Thirdly, the defendant has not contended that the granting of the People’s request will be detrimental to his health or violate any religious beliefs. (People v Pinkney, supra, citing Schmerber v California, supra.)
As set forth above, the court finds that defendant’s constitutional rights would not be violated by granting the People’s request in this matter. The defendant’s argument that his HIV status is irrelevant and prejudicial to the instant case is ludicrous in that the defendant cannot cite AIDS as both a sword and a shield at the same time. (See, People v Rahman, 62 AD2d 968.) The relevancy in this matter is clear, and it is the very heart of the People’s request for the relief they are seeking. Had the defendant never stated to the victim that he *918 had AIDS, this issue would not have arisen in the first instance.
Accordingly, for the reasons set forth above, the People’s application for an order directing that the defendant submit to a blood test is granted. The People are directed to have the blood extracted by a licensed physician, in a simple medically acceptable manner in a hospital environment (Schmerber v California, supra), and that the sample of blood to be taken be the minimum amount necessary to permit analysis, and in a manner involving the least risk of trauma or pain (Matter of Abe A., supra; Barber v Rubin, supra; People v Pinkney, supra).